Case 3:03-cv-00901-RNC    Document 18-3    Filed 10/23/2003    Page 1 of 15

Page 8

2003 U.S. Dist. LEXIS 7056, *; 91 Fair Empl. Prac. Cas. (BNA) 1459

"knew or should have known that [their] conduct involved an unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in illness or bodily injury." Buckman v. People Express, Inc., 205 Conn. 166, 173, 530 A.2d 596 (1987). Conduct giving rise to a claim for negligent infliction of emotional distress must occur in the termination process. Parsons v. United Technologies Corp., 243 Conn. 66, 88, 700 A.2d 655 (1997) ("Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process."). However, "the mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior," and therefore is not enough, by itself, to sustain a claim for negligent termination of employment." Id. at 88-89 (internal quotation marks and citation omitted); see also [*30] Perodeau v. City of Hartford, 259 Conn. 729, 751, 792 A.2d 752 (2002) ("In cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress. The dispositive issue in each case was whether the defendant's conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm.") (internal quotation marks and citations omitted).

In the present case, Hanna has not alleged, much less provided evidence, that the defendants took any actions giving rise to a claim for negligent infliction of emotional distress. Hanna's claim for negligent infliction of emotional distress, like his other claims, wholly arises from the fact that he was terminated. He has neither alleged facts nor provided evidence to support a finding that the manner in which he was fired could constitute negligent infliction of emotional distress. Because termination alone, even if wrongfully [*31] motivated, does not transgress the bounds of socially tolerable behavior, Hanna's claim for negligent infliction of emotional distress cannot survive summary judgment.

## CONCLUSION

For the aforementioned reasons, the Defendants' motions for summary judgment (Dkt. Nos. 41, 47) are granted. The clerk is instructed to close the file.

So ordered.

Dated at Bridgeport, Connecticut this    day of April 2003.

Stefan R. Underhill

United States District Judge

LEXSEE 2001 U.S. DIST. LEXIS 17341

MARIO A. JAVIER, Plaintiff, v. ENGELHARD CORP., et al., Defendants.

CIVIL ACTION NO. 3:00-CV-2301 (JCH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2001 U.S. Dist. LEXIS 17341

October 1, 2001, Decided

**DISPOSITION:** [*1] Defendant Perry's motion to dismiss was granted. Defendants' motions to dismiss were granted in part. Plaintiff's motion to renew claims under CFEPA was denied without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer, its chief executive officer (CEO) and several of its employees, alleging wrongful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000a et seq., and intentional and negligent infliction of emotional distress. The CEO moved to dismiss for lack of personal jurisdiction while the employer and employees sought dismissal under Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** Plaintiff alleged that he was not allowed to participate in training sessions, was excluded from a list of company accomplishments, and that white employees hired after him were promoted above him. The court held that it had no personal jurisdiction over the CEO as he had no personal contacts with the forum state, and jurisdiction over him could not be based on the contacts of the corporation for which he worked. The court also held that supervisors or individuals could not be held personally liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000a et seq., but the court did not rule on this same question under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq., as that question had been certified to the Connecticut Supreme Court. The court held that the employee failed to state a claim upon which relief could be granted as to the emotional distress claims as wrongful employment action, even if made with improper motivations, did not constitute extreme or outrageous behavior.

**OUTCOME:** The CEO's motion to dismiss was granted, and the employer's and employee's motions to dismiss were granted in part and denied in part.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** MARIO A. JAVIER, plaintiff, Pro se, Hartford, CT.

For ENGELHARD CORP, BARRY PERRY, BILL WILLEN, FRANK GERLANDO, ELAINE STROCK, MARC FRONING, defendants: Seth Jacoby, Purtill, Purtill & Pfeffer, South Glastonbury, CT.

For ENGELHARD CORP, BARRY PERRY, BILL WILLEN, FRANK GERLANDO, ELAINE STROCK, MARC FRONING, defendants: Patrick L. Lail, Stanford G. Wilson, Elarbee, Thompson & Trapnell, Atlanta, GA.

For BARRY PERRY, defendant: Scott E. Atwood, Elarbee, Thompson & Trapnell, [*2] Atlanta, GA.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINIONBY:** Janet C. Hall

**OPINION:**

RULING ON DEFENDANT PERRY'S MOTION TO DISMISS [DKT. NO. 21] AND DEFENDANTS ENGELHARD CORPORATION, GERLANDO, WILLEN, FRONING AND STOCK'S MOTION TO DISMISS [DKT. NO. 24]

The plaintiff, Mario Javier ("Javier"), brings claims against the defendants, Engelhard Corporation, Barry Perry, Frank Gerlando, Bill Willen, Marc Froning, and Elaine Strock pursuant to 42 U.S.C. § 1981a and 42 U.S.C. § 2000e, et seq. (Title VII) and the Connecticut Fair Employment Practices Act ("CFEPA"), § 46a-60, et seq. The plaintiff also asserts claims for intentional and negligent infliction of emotional distress. The plaintiff alleges that the defendants have subjected him to unlawful employment practices, including denying him training, failing to promote him and terminating his employment, on the basis of his national origin and in retaliation for his protest of their wrongful conduct.

Defendant Barry Perry ("Perry") seeks dismissal on all claims brought against him on the grounds that the court lacks personal jurisdiction over him and on the grounds that [*3] the plaintiff has failed to state a claim against him. The defendants, Frank Gerlando, Bill Willen, Marc Froning and Elaine Strock ("employee defendants"), seek dismissal of the claims against them brought under Title VII and CFEPA, on the grounds that they can not be held personally liable under either the federal or state statute. Finally, Engelhard Corporation and the employee defendants seek dismissal of the intentional and negligent infliction of emotional distress claims on the grounds that the facts alleged do not state such claims. n1

> n1 The plaintiff objects that the defendants failed to seek a pre-filing conference as required by the court's "Order on Pretrial Deadlines" effective as of the filing of this action. The court has since ceased this practice and anyone calling chambers to schedule such a conference is advised that it is not necessary.

For the reasons stated below, the court GRANTS Perry's motion to dismiss (Dkt. No. 21) and GRANTS in part and DENIES in part Engelhard and the employee defendants' [*4] motion to dismiss (Dkt. No 24).

I. FACTS

Taking the allegations in the amended complaint as true, Javier has set out the following facts. Engelhard Corporation is a company headquartered in New Jersey, with a facility located in East Windsor, Connecticut. Barry Perry is the CEO of Engelhard Corporation and Frank Gerlando was the General Manager of the Connecticut facility during the time Javier worked for the company. During the same time period, Bill Willen was employed as a Technical Manager at the Connecticut location, Marc Froning was a Materials Manager, and Elaine Strock was employed as a Materials Engineer

Javier was hired by Engelhard Corporation as a temporary worker in the position of laboratory technician in December of 1997. In February of 1998, based on verbal promises of promotion, Javier accepted a permanent position with the company. In March and April of 1998, Javier was denied an opportunity to participate in a training program. In August of 1998, Strock allegedly told Javier that he was "a burden to the lab and to the company" and that his personal problems were not a concern to the company. When Javier attempted to offer his suggestions to Froning, [*5] he was told to "bite his lips." Throughout 1998 and 1999, Javier was excluded from trainings.

Javier also alleges that he was excluded from a list of company accomplishments and that his picture was not included in a report on new employees. In addition, white employees hired after him were promoted above him. While his evaluation in 1998 was very positive, Javier reports that he continued to get insulted by other employees. In March of 1999, Froning said to Javier that "you foreigners are taking jobs away from us."

In March of 1999, Javier received a letter of termination from the company. On June 11, 1999, Javier filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO"). Javier received a Right to Sue Letter from the EEOC on September 4, 2000 and received a release from the CCHRO on July 9, 2000. Javier filed a claim in this court on December 1, 2000. Javier filed an Amended Complaint on January 5, 2001. n2

> n2 The court notes that the first complaint was not served on any of the defendants. Javier served the defendants with the Amended Complaint.

[*6]

II. DISCUSSION

A. Standards of Review

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In considering such a motion, the court must accept the factual allegations in the complaint as true, and all inferences must be drawn in the plaintiff's favor.

Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). "Bald assertions and conclusions of law will not suffice to state a claim . . . ." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) [*7] (citations omitted).

Defendant Perry also seeks dismissal under 12(b)(2), on the grounds that the court does not have personal jurisdiction over him for purposes of this complaint. A district court has broad discretion in deciding how to proceed with a motion to dismiss for lack of personal jurisdiction, including conducting an evidentiary hearing. CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986). The plaintiff ultimately bears the burden of establishing, either at an evidentiary hearing or at trial, that the court has personal jurisdiction over the defendants. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996). Where, as here, the issue is addressed in a motion, without the benefit of an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.). Allegations in the pleadings and affidavits "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." [*8] A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

**B. Perry's Motion to Dismiss n3**

---

n3 The court notes first that this motion to dismiss was timely filed as it was filed by Perry within 90 days of the filing of the Amended Complaint.

---

1. Personal Jurisdiction

Perry is a resident of New Jersey. Therefore, personal jurisdiction can be asserted over Perry only when (1) the federal court has jurisdiction under the forum state's laws; and (2) an assertion of jurisdiction under the circumstances of the case comports with the requirements of due process. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).

Turning to the first prong of the inquiry, Connecticut has two long-arm statutes, Conn. Gen. Stat. §§ 52-59b and 33-929. Section 33-929 relates only to foreign corporations and is inapplicable to Perry. Section 52-59(b)(a), however, is applicable and reads in pertinent part:

> (a) As to a cause of action arising from any of the acts [*9] enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . , who . . . (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Javier simply alleges that Perry transacted business in the State of [*10] Connecticut and is, therefore, reached by the long-arm statute. Javier has presented no allegations regarding Perry committing a tortious act in the state such that the court would have personal jurisdiction. In his declaration, Perry states that he had no involvement in any decision related to Javier's employment with the company. Perry's Decl. at P 6-10.

The relevant inquiry when interpreting the phrase "transacts any business" is the personal contacts of an agent or director of a company in the forum state. Jurisdiction over a director or CEO does not automatically emanate from jurisdiction over the company itself. Mozes v. Welch, 638 F. Supp. 215, 223 (D. Conn. 1986). Javier has made no showing that Perry's personal contacts with the state are such that this court could extend jurisdiction. In Perry's Declaration he

states that he does not transact business in Connecticut as an individual and any business he did in Connecticut while CEO of Engelhard involved his duties as a corporate officer. Perry's Decl. at P 5. While the court has jurisdiction over the company itself, that is not enough under Connecticut's long-arm statute to extend jurisdiction to Perry merely [*11] because he is an officer. See id.; see, also, Hagar v. Zaidman, 797 F. Supp. 132, 137 (D. Conn. 1992) (finding no personal jurisdiction over a corporate officer where any business he transacted in Connecticut was on behalf of his company). Because the court does not have personal jurisdiction over Perry, the court grants Perry's motion to dismiss. n4

> n4 The court notes that the claims against Perry could have been dismissed on the alternative ground that Javier has failed to state a claim against this defendant as he is not named in any of the allegations in the complaint. Fed. R. Civ. P. 12(b)(6); See also Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that when a complaint alleges no specific acts of a defendant the complaint is properly dismissed, even if the complaint is brought by a pro se complainant).

**B. Engelhard Corporation, Gerlando, Willen, Froning and Strock's Motion to Dismiss n5**

> n5 Again, the court notes at the outset that this motion was timely filed, having been filed within 90 days of the filing of the Amended Complaint.

[*12]

1. Individual Liability Under Title VII

The employee defendants seek dismissal of Javier's Title VII claims, brought against them in their capacities as employees of Engelhard. The Second Circuit has held that supervisors or individuals cannot be held personally liable under Title VII. Wrighten v. Glowski, 232 F.3d 119, 119 (2d Cir. 2000); Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995). Therefore, Javier cannot assert his Title VII claims against the employee defendants.

2. Individual Liability Under the CFEPA

The employee defendants also seek dismissal of the claims brought against them under CFEPA on the grounds that individuals cannot be held liable under the statute. The Connecticut Supreme Court has not addressed this issue and there has been a split among the lower courts. Compare Walters v. Homestaff Health Care, 1996 Conn. Super. LEXIS 321, No. CV 950146961S, 1996 WL 88058 (Conn. Super. Ct. Feb. 8, 1996) (finding the vice-president of a firm not liable in his individual capacity under the plain meaning of C.G.S. § 46a-60(a)(8) because he was not an "employer") and Martinez-Duffy v. DeJesus, 1996 Conn. Super. LEXIS 1120, No. CV 940545193S, slip op. (Conn. Super. Ct. May 1, 1996) [*13] (holding that a high school principal is a supervisor, not employer, and therefore not individually liable under the CFEPA), with Lueneburg v. Mystic Dental Group, 1996 Conn. Super. LEXIS 2001, No. CV 535839, 1996 WL 456967 (Conn. Super. Ct. Aug. 1, 1996) (interpreting the CFEPA to allow supervisory employees to be held individually liable).

The question of whether individual employees can be held liable under the Connecticut Fair Employment Practices Act ["CFEPA"] Conn. Gen. Stat. § 46a-60(a)(1) has been certified to the Connecticut Supreme Court by this court. See Perodeau v. City of Hartford, No. 99cv00807 (AHN)(D. Conn. Nov. 11, 2000) (endorsement granting motion to certify question). In light of the likely imminent decision on point, the court denies the defendants' motion to dismiss the CFEPA claims against the employee defendants without prejudice to renewal, pending the decision of the Connecticut Supreme Court.

3. Intentional Infliction of Emotional Distress

The employee defendants and Engelhard Corporation seek dismissal of Javier's claim for intentional infliction of emotional distress. The defendants argue that Javier has not stated, on the face of his complaint, allegations [*14] which meet the standards of this type of claim.

In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme or outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986); see also Miner v. Town of Cheshire, 126 F. Supp. 2d 184 (D. Conn. 2000).

"Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." Miner, 126 F. Supp. 2d at 194. Routine employment action, even if made with improper

motivations, do not constitute extreme or outrageous behavior. In [*15] addition, Connecticut courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." Id. at 195 (citations omitted).

Javier's claims against Engelhard and the employee defendants for intentional infliction of emotional distress are that he was not advanced along with other new employees and was eventually terminated, he was subjected to various insults, he was not allowed to participate in trainings and was not included in company publications. While such actions were no doubt hurtful to Javier, these actions do not, as a matter of law, support a claim for intentional infliction of emotional distress. The employment actions taken against Javier may have been unlawfully motivated but, by themselves, do not constitute extreme and outrageous behavior. The Connecticut courts have held that the insults and indignities are not enough to support such a claim. Therefore, the court finds that Javier has not stated a claim for intentional infliction of emotional distress and grants the defendants' motion [*16] as to that claim.

4. Negligent Infliction of Emotional Distress

The defendants also seek dismissal of Javier's claims for negligent infliction of emotional distress. The defendants argue that Javier must demonstrate that the defendants engaged in unreasonable conduct in the termination process.

In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it was caused, might result in illness or bodily harm." Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). The Connecticut Appellate Court has further required that negligent infliction of emotional distress claims plead outrageous or extreme conduct. Muniz v. Kravis, 59 Conn. App. 704, 709, 757 A.2d 1207 (2000) ("The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous."); see also Johnson v. Chesebrough-Ponds, Inc., 1996 U.S. App. LEXIS 33505, 1996 WL 734043 at *3 (2d Cir. 1996). [*17]

This court has recently held that claims of negligent infliction of emotional distress are not limited to conduct in the termination process. Munck v. New Haven Savings Bank, No. 3:01-cv-772 (D. Conn. September 17, 2001). However, even if the court looks beyond the termination, Javier's claim fails on the same grounds as his claim for intentional infliction of emotional distress. The court finds that the conduct of Engelhard and its employees was not extreme and outrageous. Therefore, the court grants defendants' motion to dismiss as to that claim.

### III. CONCLUSION

The court grants Perry's motion to dismiss (Dkt. No. 21) on the grounds that the court does not have personal jurisdiction over the defendant and because the plaintiff has failed to state a claim against this defendant. The court grants in part the motion to dismiss by Engelhard Corporation, Gerlando, Willen, Froning, and Strock (Dkt. No. 24). The court grants the motions on the grounds that the individual employees named cannot be held liable under Title VII and that the plaintiff has failed to state a claim for either intentional or negligent infliction of emotional distress. The court denies the motion, [*18] without prejudice to renew, as to the claims brought under CFEPA, pending the Connecticut Supreme Court's ruling on the issue of individual liability.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 1st day of October, 2001

/s/

Janet C. Hall

United States District Judge

LEXSEE 2000 U.S. DIST. LEXIS 20476

JANE E. LETTICK, Plaintiff, v. NATIONWIDE MUTUAL INSURANCE COMPANY, ET. AL., Defendants.

Civil Action No. 3:98cv1928(AVC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2000 U.S. Dist. LEXIS 20476

March 31, 2000, Decided
March 31, 2000, Filed

**DISPOSITION:** [*1] Defendants' motion for summary judgment (document no. 16) GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved under Fed. R. Civ. P. 56(c) for summary judgment on plaintiff's multiple claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, wrongful discharge, fraudulent and negligent misrepresentations, invasion of privacy by false light, and both negligent and intentional infliction of emotional distress, following her termination by defendants.

**OVERVIEW:** Plaintiff alleged defendants wrongfully terminated her employment as an independent insurance agent and brought many claims pursuant to common law. Defendants moved for summary judgment. The court found defendants protected themselves against employment contract claims by including in its handbook appropriate disclaimers of its intention to contract. Moreover, defendants never made any promises, either written or oral. Also, plaintiff failed to exhaust her administrative remedies prior to filing her causes of action for breach of the implied covenant of good faith and fair dealing and wrongful discharge, so she could not bring those claims. The court also found plaintiff failed to prove the essential elements for her invasion of privacy by false light and intentional infliction of emotional distress claims. Finally, the remaining torts were barred by the appropriate statute of limitations.

**OUTCOME:** The court granted summary judgment, finding many claims were not filed within the statute of limitations and plaintiff failed to pursue administrative remedies, thus barring other claims. The court also found plaintiff failed to prove a contract existed based on either an employee handbook or alleged oral statements. Finally, the court found plaintiff failed to prove either false light or intentional infliction of emotional distress.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For JANE E. LETTICK, plaintiff: John R. Williams, Williams & Pattis, New Haven, CT.

For NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE MUTUAL FIRE INS CO, NATIONWIDE LIFE INSURANCE CO., NATIONWIDE GENERAL INS CO, NATIONWIDE PROP & CASUALTY INS CO, NATIONWIDE VARIABLE LIFE INS CO, defendants: Deborah S. Freeman, Patricia Ann Shackelford, Bingham Dana, Hartford, CT.

**JUDGES:** Alfred V. Covello, Chief U.S.D.J.

**OPINIONBY:** Alfred V. Covello

**OPINION:**

RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for damages in which the plaintiff, Jane E. Lettick, alleges that the defendants, Nationwide Mutual Insurance Company, Nationwide Mutual Fire

Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property & Casualty Insurance Company and Nationwide Variable Life Insurance Company (collectively "Nationwide"), wrongfully terminated her employment as an independent insurance agent. The within action is brought pursuant to common law tenets for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, wrongful discharge, [*2] fraudulent and negligent misrepresentations, invasion of privacy by false light, negligent infliction of emotional distress and intentional infliction of emotional distress. Further, the plaintiff alleges that Nationwide violated the following statutes, Conn. Gen. Stat. § 46-110b et. seq., the Connecticut Unfair Trade Practices Act, and Conn. Gen. Stat. § 38a-816, the Connecticut Unfair Insurance Practices Act.

Nationwide brings the within motion pursuant to Rule 56(c) n1 of the Federal Rules of Civil Procedure arguing that summary judgment should be granted with respect to Counts I, II, III, IV, V, VI, VIII, XIII and XIV. n2

n1 Fed. R. Civ. P. 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

n2 Counts IX and X were previously dismissed by the court, and the plaintiff has withdrawn Counts VII, XI and XII.

[*3]

The issues presented are whether: 1) Nationwide's employee handbook established either an implied contract or serve as the basis for application of the doctrine of promissory estoppel; 2) alleged oral promises made by Nationwide's employees established either an implied contract or serve as the basis for application of the doctrine of promissory estoppel; 3) the plaintiff is barred from bringing her causes of action for wrongful discharge and breach of the implied covenant of good faith and fair dealing for failure to exhaust her administrative remedies; 4) the plaintiff's causes of action for negligent infliction of emotional distress and intentional and negligent misrepresentations are barred by the applicable statutes of limitation; and 5) the plaintiff suffered severe emotional distress, establishing a cause of action for intentional infliction of emotional distress.

For the foregoing reasons, the court concludes that: 1) Nationwide's handbook does not establish an implied contract or serve as the basis for application of the doctrine of promissory estoppel; 2) the alleged oral promises made by Nationwide's employees do not establish either an implied contract or a serve as the [*4] basis for application of the doctrine of promissory estoppel; 3) the plaintiff has failed to exhaust her administrative remedies and, therefore, is barred from bringing causes of action for breach of the implied covenant of good faith and fair dealing and wrongful discharge; 4) the plaintiff is barred by the applicable statutes of limitation to bring causes of action for negligent infliction of emotional distress, fraudulent misrepresentation and negligent misrepresentation, and 5) the plaintiff has not suffered severe emotional distress, thereby precluding her from bringing a cause of action for intentional infliction of emotional distress. Accordingly, Nationwide's motion for summary judgment (document no. 16) is GRANTED.

**FACTS**

Examination of the complaint, affidavits, pleadings, exhibits, supplemental materials and the Rule 9(c) statements of material fact accompanying the motion for summary judgment disclose the following undisputed material facts:

The plaintiff, Jane E. Lettick, is a Connecticut resident. Nationwide is incorporated in Ohio, and has business operations in Connecticut.

In May 1989, Ira Kaplan, an agency manager for Nationwide, interviewed Lettick for [*5] employment as an insurance agent. At that time, Kaplan did not hire Lettick, however, from May 1989 to September 1989, Kaplan "acted as a mentor and instructed [the plaintiff] to refer potential insurance buyers to him in order to demonstrate to Nationwide [the plaintiff's] commitment to becoming an [insurance] agent." During this time, Kaplan informed the plaintiff that if she became an agent she "would be provided with training and assistance to help [her] become familiar with Nationwide's sales practices and procedures."

On September 11, 1989, Kaplan hired the plaintiff as an employee agent trainee. At that time, the plaintiff entered into an Agent's employment agreement with Kaplan to work in his Danbury office. Shortly after beginning work, Kaplan told the plaintiff that it was company practice to write condominium insurance policies for tenants as if they were the owners of the condominiums.

In December 1990 or January 1991, Kaplan forced the plaintiff to physically leave his office. Subsequently,

Case 3:03-cv-00901-RNC    Document 18-3    Filed 10/23/2003    Page 9 of 15

Page 3
2000 U.S. Dist. LEXIS 20476, *

the plaintiff opened her own insurance agency, as a Nationwide agent trainee in Hamden, Connecticut.

In January 1991, Joseph A. Mauro became the plaintiff's agency manager, [*6] replacing Kaplan. At that time, Mauro visited the plaintiff's office. During this visit, Mauro told the plaintiff, "I don't know why you bothered spending all this money." The plaintiff then requested further training and assistance. Mauro recommended that she speak with Thomas R. Gilmore, an insurance agent for Nationwide. Further, during this time, Mauro referred to the plaintiff as a "bitch" and a "cunt," out of the presence of the plaintiff and other workers.

On December 1, 1992, the plaintiff finished the agent training program and entered into an independent contractor Agent's Agreement as a career agent with Nationwide, which terminated her Agent Employment Agreement. The Agent's Agreement states:

> 1. The parties agree that he purpose of this Agreement will be best served by your acting as an independent contractor. Therefore, it is agreed that you are an independent contractor for all purposes . . . . this is to remind you that, since you are an independent contractor and not an employee, you are solely responsible for paying all federal, state and local estimated taxes. As an independent contractor you have the right to exercise independent judgment as to time, place, [*7] and manner of soliciting insurance, servicing policyholders, and otherwise carrying out provisions of the Agreement. . . . We may offer to you, from time to time, training, counsel, and guidance based upon our accumulated experience in the sale and servicing of business. However, it is understood that you may reject or accept such offers at your discretion.
> . . . .
>
> 5. General Conduct and Representation. You will maintain a good reputation in the community which you serve and will direct your efforts in the field of insurance toward advancing the business and interest of the Companies to the best of your ability. In the conduct of your business, you will comply with all applicable insurance laws and regulations.
> . . . .
>
> 9. Cancellation. This Agreement shall be in force until cancelled by either party. This Agreement shall automatically cancel upon the date your license to act as an agent for the Companies is revoked or cancelled or upon death. Further, due to the personal nature of our relationship you or the Companies have the right to cancel this Agreement at any time after written notice has been delivered to the other or mailed to the other's last known address. It is [*8] understood that the Agent shall have access to the Agents Administrative Review Board, and its procedures as it may exist from time to time.

Further, Nationwide provided the plaintiff with an Agency Administration Handbook. The handbook contained the following language:

> The contents of the Handbook are presented as a matter of information only. The only contractual matters are those expressed in your Agent's Agreement and specifically incorporated by reference made within that contract. You have been given a separate binder in which to maintain your Agent's Agreement. While Nationwide believes wholeheartedly in the plans, policies, and procedures described herein, they are not conditions of employment or of contract. Nationwide reserves the right to modify, revoke, suspend, terminate, or change any or all such plans, policies or procedures, in whole or in part, at any time with or without notice. The language used in this handbook is not intended to create nor is it to be construed to constitute a contract between Nationwide and any or all of its employees, agents, or officers.

In December 1993, in an attempt to reach year end quotas for insurance policy sales and to [*9] qualify for a sales membership club, the plaintiff wrote and filed several fictitious insurance policies for Mauro, her agency manager and Gilmore, a fellow agent. The policies were for: 1) Mauro, for a condominium he did not own; and 2) Gilmore, for a boat he did not own. Both Mauro and Gilmore encouraged the plaintiff to create these fictitious policies. Ultimately, the fictitious policies enabled the plaintiff to receive several year end bonuses.

In June 1995, Nationwide began an investigation into the fictitious policies and sent Joanne McGoldrick, to the plaintiff's office. McGoldrick began to question the plaintiff regarding the issuing of fictitious policies. After

an extensive discussion regarding the various policies, the plaintiff "admitted [to McGoldrick] that she knew that what she was doing was wrong and that she should not be creating policies." Further, McGoldrick states that the plaintiff "now knows what she has done is wrong and she is relieved that the information is finally out . . . ."

On December 7, 1995, Nationwide cancelled its Agency Agreement with the plaintiff. On or about that time, Nationwide discharged Mauro and Gilmore and all other agents discovered [*10] to have been involved in the writing of fictitious policies.

The plaintiff appealed Nationwide's decision to cancel her Agency Agreement to the Agents Administrative Review Board. After a hearing, the Review Board rendered a split decision, with two votes in favor of the plaintiff's termination and two votes for reconsideration of the decision to terminate the plaintiff. Ultimately, Nationwide decided to uphold its decision to terminate the plaintiff.

After December 7, 1995, employees of Nationwide removed files relating to insurance policies that plaintiff had been managing from her office, in order to reassign the cases to other agents.

On May 31, 1996, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), alleging that Nationwide had terminated her based upon her sex and religious creed.

On June 3, 1996, Nicholas V. Perricone, M.D., examined the plaintiff for "complaints of a generalized rash." Perricone "treated [the plaintiff] with topical anti-inflammatories with no improvement. A biopsy was performed showing mild vasculitis, possibly secondary to drug eruption."

On April 4, 1997, the CCHRO held a fact finding conference [*11] which the plaintiff attended with counsel.

On April 29, 1997, the CCHRO dismissed the plaintiff's complaint finding that Nationwide had not engaged in any discriminatory conduct. The plaintiff did not request the CCHRO to reconsider its decision nor did she receive a release to file a civil suit from the CCHRO.

On September 4, 1998, the plaintiff filed the within action in Connecticut superior court. On September 29, 1998, the defendants removed the action to this court. On March 24, 1999, this court granted the defendant's motion to dismiss with respect to Counts IX and X of the complaint.

## STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965, 113 S. Ct. 440, 121 L. Ed. 2d 359 (1992) [*12] (quoting Anderson, 477 U.S. at 248). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

## DISCUSSION

### I. Breach of Implied Contract (Count I) and Promissory Estoppel (Count III)

#### A. Nationwide's Employment Handbook

First, Nationwide argues that its employment "handbook [does] not constitute a contract of employment with [the plaintiff]," because the handbook contained disclaimer language disavowing any contract between Nationwide and the plaintiff. Therefore, the employee handbook cannot create an implied contract nor serve as the basis for application of the doctrine of promissory estoppel and, therefore, summary judgment is appropriate.

The plaintiff responds that Nationwide's [*13] handbook created an implied contract and serves as the basis for application of the doctrine of promissory estoppel. Further, the plaintiff contends that the disclaimer language is a question of Nationwide's intent which is a question for the trier of fact and, therefore, summary judgment is inappropriate.

"On a motion for summary judgment, the threshold question of whether [an] . . . employee handbook gives rise to an enforceable contract, interpreting all inferences in a light most favorable to the plaintiff, is a question of law for the court." Cardona v. Aetna Life & Casualty, 1998 U.S. Dist. LEXIS 7246, 1998 WL 246634 at *4 (D. Conn. May 8, 1998)(citations omitted). Further, "the plaintiff has the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [her] . . . ." Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 15, 662 A.2d 89 (1995); see Coelho v. Posi-Seal International,

Inc., 208 Conn. 106, 113, 544 A.2d 170 (1988). A contract implied in fact, like an express contract, depends on actual agreement." Burnham v. Karl & Gelb, P.C., 50 Conn. App. 385, 388, 717 A.2d 811 (1998) [*14] (citations omitted).

"Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action is undertaken in reasonable reliance upon the promise." Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 195, 520 A.2d 208 (1987).

With respect to employee handbooks and manuals, "employers can protect themselves against employee contract claims based on statements made in personnel manuals by following either (or both) of two simple procedures: 1) eschewing language that could reasonably be construed as a basis for a contractual promise; and 2) including appropriate disclaimers of the intention of the contract . . . ." Gaudio v. Griffin Health Services, Corp., 249 Conn. 523, 535, 733 A.2d 197 (1999)(quoting Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199 n.5, 520 A.2d 208 (1987)).

In the present case, Nationwide protected itself by including in its handbook appropriate disclaimers of its intention to contract. The handbook states:

> The contents of the Handbook are presented as a matter of information only. The only contractual matters are those expressed in your Agent's [*15] Agreement and specifically incorporated by reference made within that contract. You have been given a separate binder in which to maintain your Agent's Agreement. While Nationwide believes wholeheartedly in the plans, policies, and procedures described herein, they are not conditions of employment or of contract. Nationwide reserves the right to modify, revoke, suspend, terminate, or change any or all such plans, policies or procedures, in whole or in part, at any time with or without notice. The language used in this handbook is not intended to create nor is it to be construed to constitute a contract between Nationwide and any or all of its employees, agents, or officers. (Emphasis added).

The language in Nationwide's handbook clearly disclaims any contractual intention by Nationwide and, therefore, cannot serve as the basis for an implied contract. See Manning v. CIGNA Corp., 807 F. Supp. 889 (D. Conn. 1991); Cowen v. Federal Express Corp., 25 F. Supp. 2d 33, 36 (D. Conn. 1998); Lombardi v. Marketing Corp. of America, 1994 Conn. Super. LEXIS 1383, 1994 WL 247956 (Conn. Super. May 23, 1994); Manning v. CIGNA Corp., 807 F. Supp. 889 (D. Conn. 1991). [*16] Further, given the plain and clear language of the disclaimer, the handbook does not manifest a present intent on the part of Nationwide to undertake immediate contractual obligations to the plaintiff. See Cardona v. Aetna Life & Casualty, 1998 U.S. Dist. LEXIS 7246, 1998 WL 246634 at *5 (D. Conn. May 8, 1998). Additionally, given the clear language in the disclaimer, the plaintiff could not have reasonably relied on any representations in Nationwide's employment handbook. See D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 520 A.2d 217 (1987). Therefore, Nationwide's employment handbook does not give rise to an implied contract nor does it serve as the basis for application of the doctrine of promissory estoppel.

### B. Oral Statements

Next, Nationwide argues that alleged oral promises made by Nationwide's employees to the plaintiff "do not support contractual liability." Further, Nationwide argues that any reliance by the plaintiff on the alleged oral promises would be unreasonable and, therefore, the oral promises cannot serve as the basis for application of the doctrine of promissory estoppel.

The plaintiff responds that the alleged oral promises [*17] created an implied contract with Nationwide and can serve as the basis for the application of the doctrine of promissory estoppel.

The court agrees with Nationwide that the alleged oral promises do not support contractual liability.

The complaint alleges the following purported oral promises:

> 1. Mr. Kaplan told the plaintiff that he had been employed by the defendant for about twenty years, and promised her that she would be provided with training and assistance to help her become familiar with the defendant's sales practices and procedures.
>
> 2. Between September 1989 and December 1990, [the] plaintiff was instructed to write insurance policies for people renting condominiums as if they instead owned the condominiums, and promised by Kaplan that it was 'company practice' to do so.

3. In December of 1993, Nationwide, through Agency Manager Joseph A. Mauro and Nationwide Agent Thomas R. Gilmore, promised that it was 'proper and common practice' to write fictitious policies in order to make the amount of sales necessary to make sales requirements mandated by Nationwide.

"It is hornbook law that to be entitled to damages in contract a plaintiff must establish a [*18] causal relation between the breach and the damages flowing from that breach. Such causal relation must be more than surmise or conjecture . . . [and] where ... the damages claimed are remote from the breach complained of and the causal connection is wholly conjectural, there can be no recovery." West Haven Sound Development Corp. v. City of West Haven, 207 Conn. 308, 314, 541 A.2d 858 (1988)(citing Calig v. Schrank, 179 Conn. 283, 286, 426 A.2d 276 (1976)). "Courts have traditionally held that a party may recover general contract damages for any loss that may fairly and reasonably be considered as arising naturally, i.e., according to the usual course of things, from such breach of contract itself . . . ." Jacobs v. Thomas, 26 Conn. App. 305, 314, 600 A.2d 1378 (1991), cert. denied, 212 Conn. 914 (1992)

The plaintiff, with respect to the first alleged oral promise, argues that Nationwide entered into a contract to train her, and then breached that contract when Nationwide failed to do so. Assuming arguendo, that such a contract existed, the court concludes that the plaintiff has failed to establish that the alleged breach proximately caused the [*19] damages that she claims. The only causal relationship between this purported breach and the damage which she claims here, i.e. her wrongful discharge and the attendant loss of income, lies in her implicit assertion that had Nationwide properly trained her, she would not have thereafter written fictitious policies. The court concludes that such an argument defies credulity. The plaintiff is in effect saying, that if properly trained, she would not have committed a fraud upon her employer, an act involving ethical and moral considerations that clearly bear no relation to the "training" which she alleges to have been promised. Nowhere in her argument does the plaintiff claim to have lacked understanding with respect to anything concerning the issuing of the fictitious insurance policies. Here, the plaintiff has failed to allege or provide evidence that she did not know the truth or that she lacked available means of knowing that writing fictitious policies was wrong. Accordingly, the first alleged oral promise does not serve as the basis for contractual liability because the damages claimed by the plaintiff are wholly unrelated to the breach.

The second n3 and third n4 purported promises, [*20] alleging that Kaplan, Mauro and Gilmore told the plaintiff that it was Nationwide's policy to write fictitious policies, also fail to serve as a basis for an express or an implied contract or serve as the basis for application of the doctrine of promissory estoppel. Here, neither of the statements made by Nationwide's employees constitute a promise. A promise is defined as a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Black's Law Dictionary 842 (6th Ed. 1991). Neither of the above statements manifest an intent on Nationwide's part to do anything. Without a promise, there can be no promissory estoppel nor an implied contract. See D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 520 A.2d 217 (1987). Accordingly, Nationwide's motion for summary judgment with respect to Counts I and III, is granted.

n3 The second alleged oral promise is as follows: "Between September 1989 and December 1990, [the] plaintiff was instructed to write insurance policies for people renting condominiums as if they instead owned the condominiums, and promised by Kaplan that it was 'company practice' to do so." [*21]

n4 The third alleged oral promise is as follows: "In December of 1993, Nationwide, through Agency Manager Joseph A. Mauro and Nationwide Agent Thomas R. Gilmore, promised that it was 'proper and common practice' to write fictitious policies in order to make the amount of sales necessary to make sales requirements mandated by Nationwide."

## II Breach of Implied Covenant of Good Faith and Fair Dealing (Count II) and Wrongful Discharge (Count IV)

Next, Nationwide argues that summary judgment should be granted with respect to Count II, alleging a breach of the implied covenant of good faith and fair dealing and Count IV, wrongful discharge. Specifically, Nationwide argues that the plaintiff, to establish her causes of action for breach of the implied covenant of good faith and wrongful discharge, had to allege a violation of an important public policy. Nationwide further argues that the plaintiff had to exhaust her administrative remedies in order to establish a violation of an important public policy. Since the plaintiff "had

available to her a statutory remedy under [Conn. Gen. Stat. [*22] ] section 46a-60(a)(1), n5 for wrongful discharge based on discrimination," and failed to exhaust that remedy, she is barred from bringing causes of action for breach of the implied covenant of good faith and fair dealing and wrongful termination.

> n5 Conn. Gen. Stat. § 46a-60 states that "it shall be a discriminatory practice in violation of this section . . . for an employer . . . to discharge from employment any individual . . . because of the individual's race, color, religious creed, age, sex . . . ."

The plaintiff responds that she has established her causes of action by alleging that Nationwide violated an important public policy by discriminating against her because of her gender and religious preference. Further, the plaintiff argues that whether or not Nationwide violated an important public policy is a question for the trier of fact.

"In order for an employee to establish a claim for breach of the implied covenant of good faith and fair dealing, [she] must allege either that an enforceable employment [*23] contract exists, or that the employer's actions in discharging the employee violated a recognized public policy." Cowen v. Federal Express Corp., 25 F. Supp. 2d 33, 36 (D. Conn. 1998); see Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984); see also Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475, 427 A.2d 385 (1980). Similarly, to establish a cause of action for wrongful discharge the plaintiff must allege "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Carbone v. Atlantic Richfield Co., 204 Conn. 460, 466-67, 528 A.2d 1137 (1987).

An action for wrongful discharge exists "if the former employee can prove Further, in "cases which have established a tort . . . remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178 (2000)(emphasis added)(citations [*24] omitted). Accordingly, "when a plaintiff has 'available to [her] administrative remedies that could have afforded [her] meaningful relief . . . [her] failure to [properly pursue those remedies] forecloses [her] access to judicial relief, because it deprives the trial court of jurisdiction to hear [her] complaint.'" Burnham v. Karl & Gelb. P.C., 252 Conn. 153, 168-69, 745 A.2d 178 (2000)(quoting Sullivan v. Board of Police Commissioners, 196 Conn. 208, 217-18, 491 A.2d 1096 (1985)).

In the present case, on May 31, 1996, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") pursuant to Conn. Gen. Stat. § 46a-60(a)(1). On April 29, 1997, the CCHRO dismissed the plaintiff's complaint finding that Nationwide had not engaged in discriminatory conduct. At no time prior to or after the dismissal of the plaintiff's complaint did she request or obtain a release from the CCHRO to pursue a civil action, as required by Conn. Gen Stat. § 46a-101. n6 See also Conn. Gen. Stat. § 46a-100.

> n6 Conn. Gen. Stat. § 46a-101 states that "no action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."

[*25]

"Since the enactment of § § 46a-100 and 46a-101, the court has dismissed employment discrimination suits where the complainants have not exhausted the administrative remedies available to them on the ground that it lacks subject matter jurisdiction." Webb v. Ethan Allen, Inc., 1996 Conn. Super. LEXIS 518, 1996 WL 179873 (Conn. Super. Ct. Feb. 23, 1996). Moreover, the cases establishing the torts of breach of the implied covenant of good faith and fair dealing and wrongful discharge "rely upon the fact that in the context of their case, the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178 (2000)(emphasis in the original)(citations omitted). Here, the plaintiff has failed to exhaust her administrative remedies prior to filing her causes of action for breach of the implied covenant of good faith and fair dealing and wrongful discharge. Accordingly, she cannot now assert causes of action based upon violations of public policy when she had a statutory remedy available. Therefore, Nationwide's motion for summary judgment with respect [*26] to Count II, breach of the implied covenant of good faith and fair dealing, and Count IV for wrongful discharge, is granted.

### III Statute of Limitations

#### A. Fraudulent Misrepresentations

Next, Nationwide argues that Count V of the complaint, alleging fraudulent misrepresentations, is

barred by Conn. Gen. Stat. § 52-577, n7 which provides for a three year statute of limitations. Specifically, Nationwide argues that its employee handbook, which the plaintiff relies upon for her fraud claim, was given to her in 1992, six years prior to the plaintiff filing her cause of action for fraudulent misrepresentations. Further, Nationwide argues that all of the alleged oral fraudulent misrepresentations were made to the plaintiff no later than December 1993, five years prior to the plaintiff filing the within cause of action and, therefore, the cause of action is barred under this legal theory.

> n7 Conn. Gen. Stat. § 52-577 states: "No action upon a tort shall brought but within three years from the date of the act or omission complained of."

[*27]

The plaintiff responds that the "handbook was continually updated so that in effect, [the] plaintiff's reliance on representations made to her in 1992 continued throughout her employment until her termination in November of 1995." Further, the plaintiff states that the "oral statements by [the] defendant . . . continued throughout her employment up until her termination in November of 1995."

A "fraudulent misrepresentation claim is governed by the three year stature of limitations under Conn. Gen. Stat. § 52-577." T.F.T.F. Capital Corp. v. Marcus Dairy, Inc., 33 F. Supp. 2d 122, 126 (D. Conn. 1998)(citing Day v. General Electric Credit Corp., 15 Conn. App. 677, 683, 546 A.2d 315 cert. denied, 209 Conn. 819, 551 A.2d 755 (1988)). Conn. Gen. Stat. § 52-577 states that "no action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Id. Accordingly, "the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King, P.C., 32 Conn. App. 786, 790, 631 A.2d 340 (Conn App. Ct. 1993); [*28] see Fichera v. Mine Hill Corp., 207 Conn. 204, 212, 541 A.2d 472 (1988).

In the present case, the plaintiff's cause of action for fraudulent misrepresentations is barred by the statute of limitations. The plaintiff learned of any allegedly fraudulent misrepresentations or omissions in November 1992, at the time Nationwide gave the plaintiff the employee handbook. Accordingly, the plaintiff had until November 1995 in which to pursue her cause of action. See Fichera v. Mine Hill Corp., 207 Conn. 204, 212, 541 A.2d 472 (1988); see also Conn. Gen. Stat. § 52-577. Moreover, beyond conclusory allegations made by the plaintiff that Nationwide updated the handbook, there is no evidence in the record that Nationwide updated the handbook after 1992. Without any updates to the handbook, the statute of limitations began to run in November 1992, and expired in November 1995, three years later. The plaintiff filed her complaint on September 4, 1998, almost three years after the expiration of the statute of limitations period. Accordingly, the plaintiff is barred by Conn. Gen. Stat. § 52-577 from alleging fraudulent misrepresentations arising from the employee handbook.

Next, the court [*29] considers whether there is evidence of oral fraudulent misrepresentations, which would extend the statute of limitations period. The plaintiff states, in her brief in opposition to the motion for summary judgment, that "oral statements by [Nationwide] . . . continued throughout her employment up until her termination in November of 1995." Besides this conclusory assertion however, the only evidence in the record is the plaintiff's own affidavit which only provides statements made by Nationwide's employees prior to 1993. Without evidence of misrepresentations after 1993, the commencement of the statute of limitations is not extended and the plaintiff's cause of action for fraudulent misrepresentations is barred by the three year statute of limitations. Accordingly, summary judgment is granted with respect to Count V of the complaint.

### B. Negligent Misrepresentations

Next, Nationwide argues that Count VI, alleging negligent misrepresentations is barred by the statute of limitations for negligence actions, Conn. Gen. Stat. § 52-584, n8 which requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered. Specifically, [*30] Nationwide argues that the plaintiff "first sustained injury . . . no later than December 7, 1995, when Nationwide terminated her Agent's Agreement." Accordingly, the plaintiff had until December 7, 1997, in which to file her cause of action. The plaintiff filed her cause of action on September 4, 1998 and, therefore, is barred by the statute of limitations.

> n8 Conn. Gen. Stat. § 52-584 states: "no action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ."

The plaintiff does not respond to the defendant's statute of limitations argument.

The tort of negligent misrepresentations is governed by Conn. Gen. Stat. § 52-584. See Cucuel v. Fayed, 1997 Conn. Super. LEXIS 538, 1997 WL 120007 at *3 (Conn. Super. Ct. Feb. 28, 1997)(citing Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 657 A.2d 212 (1995)). Conn. Gen. Stat. § 52-584 states that "no action to recover damages for injury [*31] to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ." Id. Accordingly, the "injury occurs when a party suffers some for of actionable harm." Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257 (1984)(internal quotations omitted). "Actionable harm occurs when the plaintiff discovers . . . the essential elements of a cause of action . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." Cucuel v. Fayed, 1997 Conn. Super. LEXIS 538, 1997 WL 120007 at *3 (Conn. Super. Ct. Feb. 28, 1997)(internal quotations omitted)(quoting Lambert v. Stovell, 205 Conn. 1, 529 A.2d 710 (1987)).

In the present case, the alleged actionable harm occurred on December 7, 1995, when the defendant terminated her employment. The plaintiff provides no evidence of injuries or misrepresentations that occurred later than December 7, 1995. Accordingly, the plaintiff had until December 7, 1997, to file her cause of action for negligent misrepresentations. The plaintiff filed her cause of action on September 4, 1998. Accordingly, the plaintiff's cause [*32] of action for negligent misrepresentations is barred by Conn. Gen. Stat. § 52-584. Therefore, Nationwide's motion for summary judgment with respect to Count VI is granted.

### C. Negligent Infliction of Emotional Distress

Next, Nationwide argues that Count XIV, alleging negligent infliction of emotional distress is also barred by Conn. Gen. Stat. § 52-584, which provides for a two year statute of limitations. Specifically, Nationwide argues that the plaintiff developed physical manifestations of her emotional distress on June 3, 1996, thus discovering, at that time, the essential elements of the cause of action. Accordingly, the plaintiff had until June 3, 1998, in which to file her cause of action for negligent infliction of emotional distress. The plaintiff filed her cause of action on September 4, 1998 and, therefore, is barred by the two year statute of limitations pursuant to Conn. Gen. Stat. § 52-584.

The plaintiff does not respond to the defendant's argument.

The tort of negligent infliction of emotional distress is governed by Conn. Gen. Stat. § 52-584. See Rivera v. Double A Transportation, Inc., 248 Conn. 21, 29, 727 A.2d 204 (1999). Conn. Gen. Stat. § 52-584 states [*33] that "no action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ." Conn. Gen. Stat. § 52-584. Accordingly, the "injury occurs when a party suffers some for of actionable harm." Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257 (1984)(internal quotations omitted). "Actionable harm occurs when the plaintiff discovers . . . the essential elements of a cause of action . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." Cucuel v. Fayed, 1997 Conn. Super. LEXIS 538, 1997 WL 120007 at *3 (Conn. Super. Ct. Feb. 28, 1997)(internal quotations omitted)(quoting Lambert v. Stovell, 205 Conn. 1, 529 A.2d 710 (1987)). The essential elements to establish a cause of action for negligent infliction of emotional distress are:

> 1) that the Defendants' conduct created an unreasonable risk of causing emotional distress;
> 2) that the Defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress;
> 3) that from the facts known to them at the time of their [*34] conduct, they should have realized the distress, if it were caused, might result in illness or bodily harm; and
> 4) that the Defendants' conduct actually caused the Plaintiff to suffer emotional distress.

Rapp v. United Technologies Corp., 1999 Conn. Super. LEXIS 1225, 1999 WL 329815 at *4 (Conn. Super. Ct. April 29, 1999)(citing Barrett v. Danbury Hospital, 232 Conn. 242, 261-62, 654 A.2d 748 (1995)).

In the present case, on June 3, 1996, Nicholas V. Perricone, M.D., diagnosed the plaintiff with a rash. It was at that time that the plaintiff discovered the essential element of bodily harm, establishing the tort for negligent infliction of emotional distress. Accordingly, the plaintiff had until June 3, 1998 in which to file this cause of action. See Conn. Gen. Stat. § 52-584. The plaintiff filed her complaint, containing the within cause of action, on September 4, 1998. Accordingly, the statute of limitations bars the plaintiff's cause of action for negligent infliction of emotional distress. Therefore, Nationwide's motion for summary judgment, with respect to Count XIV, is granted.

### IV False Light Invasion of Privacy

Nationwide argues that it is entitled summary [*35] judgment with respect to Count VIII, false light invasion