of privacy, because there is no evidence that there were any false statements published by Nationwide.

The plaintiff responds that there are genuine issue of material fact as to whether the statements made by the defendant were in fact true and, therefore, summary judgment is inappropriate.

In Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 448 A.2d 1317 (1988), the Connecticut Supreme Court recognized four types of false light invasion privacy torts. Id. at 127. They are: 1) unreasonable intrusion upon the seclusion of another; 2) appropriation of the other's name or likeness; 3) unreasonable publicity given to the other's private life; or 4) publicity that unreasonably places the other in a false light before the public. Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 128, 448 A.2d 1317 (1988). "[A] false light invasion of privacy occurs if: a) the false light in which the other was placed would be highly offensive to a reasonable person; and b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in [*36] which the other would be placed." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 131, 448 A.2d 1317 (1988)(citations omitted). "The essence of a false light privacy claim is that the matter published concerning the plaintiff: 1) is not true; . . . and 2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonable be expected to be taken by a reasonable man in his position." Hankard v. Town of Avon, 1999 Conn. Super. LEXIS 1679, 1999 WL 482635 at *5 (Conn. Super. Ct. June 22, 1999).

In the present case, the complaint alleges that Nationwide "wilfully and maliciously published widely to a substantial number of people, including its officers in Connecticut and Ohio and its employees and agents, that the plaintiff had written fictitious policies." However, the record contains no evidence of any published statements to support the above allegation. While the moving party has the burden of demonstrating that there are no genuine issues of material fact, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts [*37] showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)(internal quotations omitted). Mere "conclusory allegations . . . are insufficient" to survive a summary judgment motion. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Accordingly, since the plaintiff has not argued and there are no facts in evidence, other than conclusory allegations contained in the complaint, the defendants'

motion for summary judgment, with respect to Count VIII, is granted.

## V Intentional Infliction of Emotional Distress

Nationwide argues that summary judgment should be granted with respect to Count XIII, intentional infliction of emotional distress, because its conduct was neither extreme nor outrageous.

The plaintiff responds that she has sufficiently pled a cause of action for intentional infliction of emotional distress based upon: 1) verbal insults; 2) gender and religious discrimination; and 3) interference with her business relations. Further, the plaintiff argues that there are material facts in dispute and that whether she suffered severe emotional distress is a question for the trier of fact. [*38]

The elements for intentional infliction of emotional distress pursuant to the common law of Connecticut are that: 1) the defendants intended or knew that emotional distress was a likely result of their conduct; 2) the defendants' conduct was extreme and outrageous; 3) the defendants' conduct caused him emotional distress; and 4) the plaintiffs' emotional distress was severe. See Thomas v. St. Francis Hospital & Medical Center, 990 F. Supp. 81, 90, 1998 WL 10417, * 9 (D. Conn. 1998) (citing Vorvis v. Southern New England Telephone Co., 821 F. Supp. 851, 855 (D. Conn. 1993)); see also Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337 (1986).

Liability for intentional infliction of emotional distress has been found "only when conduct has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Kintner v. Nidec-Torin Corp., 662 F. Supp. 112 (D. Conn. 1987). "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." Reed v. Town of Branford, 949 F. Supp. 87, 92 (D. Conn. 1996) [*39] (citing Brown v. Ellis, 40 Conn. Supp. 165, 484 A.2d 944, 946 (Conn. Super. Ct. 1984)). Whether conduct is sufficient to constitute "extreme" and "outrageous" behavior, is a question, in the first instance, for the court. See Thomas v. St. Francis Hospital & Medical Center, 990 F. Supp. 81, 91, 1998 WL 10417, *9, (D. Conn. 1998); See also Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552 (D. Conn. 1996).

In the present case, the plaintiff's contention that Mauro's "references to [her] as a 'bitch' and a 'cunt,'" stated out of the presence of the plaintiff and other employees does not constitute highly offensive behavior intended to inflict emotional distress upon the plaintiff. Although the court in no way condones the statements made, mere insults or indignities do not rise to the level of extreme and outrageous conduct to establish a cause

of action of intentional infliction of emotional distress. See Brown v. Ellis, 40 Conn. Supp. 165, 484 A.2d 944, 946 (Conn. Super. Ct. 1984); see also Reed v. Town of Branford, 949 F. Supp. 87, 92 (D. Conn. 1996)(stating that "mere insults, indignities, or annoyances that are not extreme or outrageous [*40] will not suffice").

Further, "intentional infliction of emotional distress requires . . . mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 267, 597 A.2d 807 (1991). Here, the plaintiff has not alleged nor provided evidence of mental distress of a very serious kind. The plaintiff has only provided evidence that Mauro made statements out of the presence of herself and other employees. Without further evidence, the plaintiff has failed to provide sufficient evidence that Mauro's conduct was so outrageous as to rise to the level to establish a cause of action for intentional infliction of emotional distress.

Second, the plaintiff's argument that Nationwide's employees discriminated against her does not establish a cause of action for intentional infliction of emotional distress. Specifically, the plaintiff has failed to allege any discriminatory conduct by Nationwide that rises to the level of intentional, extreme or outrageous or conduct being so atrocious so as to go beyond all behavior acceptable in society. See Dobrich v. General Dynamics Corp., 40 F. Supp. 2d 90 (D. Conn. 1999). Further, the court can find no evidence in the record [*41] of discrimination that would be conduct so outrageous so as to rise to the level of extreme and outrageous conduct. Accordingly, this argument cannot give rise to a cause of action for intentional infliction of emotional distress.

Finally, the plaintiff's argument that Nationwide intentionally inflicted emotional distress by interfering with her business relations is unpersuasive. The interference the plaintiff alleges is that between December 7, 1995 and April 23, 1996, Nationwide "permitted and encouraged its agents and employees to transfer or attempt to transfer to other offices policies of the plaintiff's insured without her knowledge or approval." This argument fails, because Nationwide terminated the plaintiff's employment on December 7, 1995, and needed to reassign the files to other agents. Accordingly, the court concludes that the plaintiff has failed to provide evidence that Nationwide's conduct has been so outrageous in character or so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. See Kintner v. Nidec-Torin Corp., 662 F. Supp. 112 (D. Conn. 1987). Accordingly, [*42] Nationwide's motion for summary judgment, with respect to Count XIII, is granted.

## CONCLUSION

For the reasons stated herein, the defendants' motion for summary judgment (document no. 16) is **GRANTED**. The clerk is hereby ordered to close the case.

It is so ordered this 31ST day of March, 2000 at Hartford, Connecticut.

Alfred V. Covello, Chief U.S.D.J.

## JUDGMENT

This action having come on for consideration of the defendants' motion for summary judgment before the Honorable Alfred V. Covello, Chief United States District Judge; and

The Court having considered the full record of the case, including applicable principles of law, filed its Ruling on the Defendants' Motion for Summary Judgment on March 31, 2000, granting the motion; it is therefore

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered for defendants Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property & Casualty Insurance Company and Nationwide Variable Life Insurance Company.

Dated at Hartford, Connecticut, this 4th day of April, 2000.

LEXSEE 1997 CONN. SUPER. LEXIS 646

Ronald Protasewich v. Combustion Engineering, Inc. et al.

CV 950552146S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
HARTFORD - NEW BRITAIN, AT HARTFORD

1997 Conn. Super. LEXIS 646

March 3, 1997, Decided
March 7, 1997, Filed

NOTICE: [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: The defendants' motions to strike are granted as to counts 3 and 5, and denied as to counts 1, 2, 6 and 8.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant corporate officers filed a motion to strike plaintiff employee's counts of breach of contract, breach of the covenants of good faith and fair dealing, wrongful termination, intentional and negligent infliction of emotional distress, tortious interference with contractual relationship, and negligent misrepresentation in relation to his wrongful discharge case. The employee filed a memo in opposition to the motion.

OVERVIEW: The corporate officers accused the employee of a secret relationship with a sales representative and required him to sign a statement attesting to the accuracy of the representations, despite believing that the document contained false material. The employee complained of the unfair treatment. He was terminated for alleged misconduct. The court found that the employee sufficiently alleged that he had an implied employment contract that provided for termination for cause only. There was no showing that the representations made by the corporate officers in their policies and practices were sufficiently promissory to induce reasonable reliance on the part of the employee. The employee's status as an at-will employee was a question of fact. The facts did not establish that the employee was terminated because of an attempt to uphold an important public policy. The complaint did not satisfy the severe emotional distress elements of intentional infliction of emotional distress but did allege facts to prove unreasonable conduct in the termination process. The court only granted the motion to strike the counts of wrongful termination and intentional infliction of emotional distress.

OUTCOME: The court granted the corporate officers' motion to strike as to the counts of wrongful termination and intentional infliction of emotional distress. The court denied their motion as to the counts of breach of contract, breach of the covenants of good faith and fair dealing, negligent infliction of emotional distress, tortious interference with contractual relationship, and negligent misrepresentation.

LexisNexis (TM) HEADNOTES - Core Concepts:

JUDGES: Douglas S. Lavine Judge, Superior Court.

OPINIONBY: Douglas S. Lavine

OPINION: Memorandum of Decision on Defendants' Motions to Strike

Factual Background

The plaintiff, Ronald Protasewich, was employed jointly by Combustion Engineering, Inc. ("Combustion") and

Asea Brown Boveri, Inc. ("Asea") n1 from August 8, 1983, until May 23, 1995, "in various positions, including most recently as a Senior Project Procurement Manager." (Revised Complaint, 7.) The following, in substance, is alleged by the plaintiff in his revised complaint, dated June 3, 1996.

> n1 Asea and Combustion share the same business address and, apparently, jointly employed the plaintiff. (See Revised Complaint, 2-3.)

The plaintiff received favorable reviews, including promotions [*2] and pay raises, throughout his tenure. (See Revised Complaint, 8.) In January 1995, the president of Combustion and Asea, Richard F. Cronin ("Cronin") announced that the corporation would begin an internal investigation, with employee interviews, into "inappropriate business practices." (See Revised Complaint, 9.)

On May 11, 1995, the plaintiff was interrogated in a locked conference by Kevin Chadbourne Downs ("Downs") (acting under the authority of the corporate legal counsel). (See Revised Complaint, 11 and 12.) This interview continued on May 12 and May 15. (See Revised Complaint, 26, 28.) The plaintiff was required to sign a confidentiality agreement, which prohibited the plaintiff from discussing the interview with anyone except for his wife. (See Revised Complaint, 13.) The plaintiff was told he was simply being interviewed and that counsel was not necessary. (Revised Complaint, 13.)

Downs informed the plaintiff that information was gathered about the plaintiff through "clandestine surveillance, wire-tapping, eavesdropping and anonymous informants"; (Revised Complaint, 14); which led the corporation to believe that the plaintiff was having a secret relationship with, [*3] and was accepting "bribes, lunches, gifts and vacations" from John Nicolace ("Nicolace"), a sales representative. (Revised Complaint, 15.) The plaintiff vigorously denied the accusations about this improper relationship with Nicolace. (See Revised Complaint, 16.)

The plaintiff was required to sign a statement attesting to the accuracy of the representations therein, despite believing the document contained false and misleading material. (See Revised Complaint, 19-21.) The plaintiff was advised *inter alia*, that if he did not sign the document he would be terminated for insubordination; (see Revised Complaint, 22); and that he could amend the statement at a later date. (See Revised Complaint, 23.) The plaintiff thus signed the document. (See Revised Complaint, 24.)

The plaintiff reported the unfair treatment he received by Downs to General Counsel Thomas S. Sacco. (See Revised Complaint, 25.)

The plaintiff submitted bank statements upon Downs' demand and signed an addendum to his original statement on May 15, despite the inclusion of false information, under threat of termination. (See Revised Complaint, 28-29, 31.) The addendum indicated that $ 59,000 of "unexplained" [*4] deposits were made to the plaintiff's bank accounts from 1990-94. (See Revised Complaint, 29.) Again, on May 15, the plaintiff reported his unfair treatment to Sacco and also demanded the return of his bank statements, together with an itemization of the alleged "unexplained" deposits. (See Revised Complaint, 32.) After two additional demands for an itemization of the deposits in question; (see Revised Complaint, 33-34); and complaints about Downs' treatment to both Sacco and Cronin; (see Revised Complaint, 35-36); the plaintiff was given a specific itemization of the questioned deposits. (See Revised Complaint, 37.)

On May 18, the plaintiff demanded to amend the previously signed statement and addendum, but Downs refused this request. (See Revised Complaint, 38.)

The plaintiff and fourteen other employees were terminated for alleged misconduct as a result of the internal investigation on May 23, 1995. (See Revised Complaint, 39-40.) On May 23, the plaintiff was escorted out of the building by security personnel with security vehicles positioned outside in full view of his co-workers. (See Revised Complaint, 41-42.) Combustion and Asea, through Cronin, announced the plaintiff's [*5] termination to all employees and then, on May 24 and May 26, "caused to be published in The *Journal Inquirer* and *The Hartford Courant* the statement that all employees terminated on May 23, 1995, were terminated for improper business conduct." (Revised Complaint, 43.)

Procedural History

The plaintiff filed an eight-count revised complaint on June 4, 1996, naming as defendant Combustion, Asea, Cronin, Sacco and Downs. n2

> n2 This memorandum will collectively refer to Combustion and Asea as the "Corporate Defendants." The remaining defendants will be referred to by their last names.

Counts one through three of the plaintiff's revised complaint, directed to the Corporate Defendants, allege (1) breach of contract/promissory estoppel; (2) breach of the covenants of good faith and fair dealing; and (3) wrongful termination. Count four, directed to the Corporate Defendants and Cronin, alleges defamation. Counts five and six, directed to all of the defendants, allege intentional and negligent infliction [*6] of emotional distress, respectively. Count seven, directed against Sacco, Cronin, and Downs, alleged tortious interference with contractual relationship. n3 Count eight, directed to all of the defendants, alleges negligent misrepresentation.

> n3 Count seven was stricken by concession of the plaintiff at short calendar on December 2, 1996, and thus will play no further role in this discussion.

The Corporate Defendants, Sacco and Cronin filed a motion to strike counts one through three and five through eight of the plaintiff's revised complaint on June 20, 1996, accompanied by a supporting memorandum of law. n4 Downs filed a motion to strike counts five through eight of the plaintiff's revised complaint on July 10, 1996, accompanied by a supporting memorandum of law. The plaintiff filed a single memorandum in opposition to these motions to strike on September 11, 1996.

> n4 The Corporate Defendants, Sacco and Cronin, collectively, when appropriate, will hereinafter be referred to as the "Group Defendants."

[*7]

Legal Discussion

A motion to strike is the proper method by which to challenge the legal sufficiency of a complaint or any count therein. *Gulack v. Gulack*, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citation omitted; internal quotation marks omitted.) *Novametrix Medical Systems v. BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Id.* "In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial." *Levine v. Bess & Paul Sigel Hebrew Academy of Greater Hartford, Inc.*, 39 Conn. Supp. 129, 132, 471 A.2d 679 (1983).

The grounds for the two pending motions to strike, which are nearly identical with respect to counts five through eight, n5 and for the opposition to the motions be discussed below count by count.

> n5 Down's motion to strike and accompanying memorandum of law adopt by reference the legal arguments contained in the Group Defendants' motion to strike and accompanying memorandum of law.

[*8]

Count One: Breach of Contract/Promissory Estoppel

The Corporate Defendants contend that the plaintiff's first count fails because the statements alleged in the revised complaint do not demonstrate any contractual commitment on the part of the Corporate Defendants to discharge the plaintiff only for cause, nor do the allegations indicate that the alleged contract was supported by any consideration. Rather, the Corporate Defendants argue that the plaintiff was an employee at will, terminable with or without cause. The Corporate Defendants further contend that any statements made to the plaintiff did not change the terms of the plaintiff's employment, nor were the statements sufficiently promissory or definite to support a cause of action for promissory estoppel.

The plaintiff asserts that representations made to him by the Corporate Defendants in their literature, policies, statements and practices created an implied employment contract which allowed for termination for cause only. This implied contract, plaintiff asserts, also required the Corporate Defendants to treat the plaintiff fairly, investigate claims, review decisions to terminate employees, give the plaintiff an [*9] opportunity to confront claims, provide warning of misconduct, etc. (See Revised Complaint, count 1, 50.) As to the Corporate Defendants' lack of consideration argument, the plaintiff argues that continued employment is sufficient consideration for an employment contract.

Breach of Contract

The Connecticut Supreme Court has stated, "at the outset, we note that all employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn.

1, 13, 662 A.2d 89 (1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Citation omitted; internal quotation marks omitted.) *Id.*, 14. "The default rule of employment at will can be modified by the agreement of the parties." *Id.* "A contract implied in fact, like an express contract, depends on actual agreement." *Barry v. Posi-Seal International, Inc.*, 36 Conn.App. 1, 5, 647 A.2d 1031 (1994).

[*10]
Construing the facts alleged in the complaint in the light most favorable to the plaintiff, by citing various representations made by the Corporate Defendants in their literature, policies, statements and practices, the plaintiff has sufficiently alleged, for purposes of withstanding the motions to strike, that he had an implied employment contract which provided for termination for cause only. "In the absence of definitive contract language . . . the determination of what the parties intended to encompass in their contractual commitment is a question of the intention of the parties, and an inference of fact." (Citation omitted; internal quotation marks omitted.) *Finley v. Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987). See also *Skierkowski v. Creative Graphics Services, Inc.*, Superior Court, judicial district of Hartford-New Britain at New Britain, 1995 Conn. Super. LEXIS 1374, Docket No. 463242 (May 5, 1995) (Handy, J.) ("It is up to the trier of fact to determine the validity of these alleged representations. If valid, the trier of fact must then establish if such representation did in fact create an implied contract. If and when it is [*11] determined that said contract existed, the trier of fact will then entertain the issues raised by the defendant regarding whether or not the plaintiff relied on the representations and whether or not the defendant has just cause in terminating the plaintiff's employment.")

Promissory Estoppel

"A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987).

Construing the facts alleged in the complaint in the light most favorable to the plaintiff, the facts alleged do not support a cause of action for promissory estoppel because the representations made by the Corporate Defendants in their policies, literature, statements and practices were not sufficiently promissory to induce reasonable reliance on the part of the plaintiff. (See Revised Complaint, count 1, 46, 47.)

Because the plaintiff has sufficiently [*12] pleaded a cause of action for breach of contract, although not a cause of action for promissory estoppel, the Corporate Defendants' motions to strike count one are denied.

Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

Working on the assumption that the plaintiff was an employee at will, the Corporate Defendants argue that the covenant of good faith and fair dealing cannot be read into an employment at will relationship, unless the plaintiff alleges a violation of an important public policy. The Corporate Defendants contend that the plaintiff has failed to allege the violation of an important public policy with which to support such a cause of action.

The plaintiff contends that the covenant of good faith and fair dealing is implicit in employment contracts. The plaintiff argues that because he has sufficiently pleaded the existence of an employment contract, his cause of action for breach of the covenant of good faith and fair dealing is legally sufficient. See *Carbone v. Atlantic Richfield Co.*, 204 Conn. 460, 470-71, 528 A.2d 1137 (1987), citing *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984). n6

> n6 The plaintiff makes allegations of statutory violations in count 3, paragraph 56 to support his argument that the Corporate Defendants violated an important public policy, but these allegations are not set forth in count two.

[*13]

In light of the above ruling with respect to count one, and the fact that plaintiff's status presents a factual issue, the motions to strike this count are denied.

Count Three: Wrongful Termination

The Corporate Defendants, assuming for the basis of their argument that the plaintiff was an employee at will, assert that the plaintiff has failed to allege any facts which would allow the plaintiff's cause of action to fall under the "public policy" exception to the terminable at will doctrine. Instead, the Corporate Defendants argue, the plaintiff tries to characterize certain tortious conduct as violative of public policy.

In opposition, the plaintiff contends that allegations of violations of several sections of the Connecticut General Statutes support the claim that the plaintiff's termination was in violation of public policy. Therefore, the plaintiff argues, his cause of action for wrongful termination is legally sufficient.

The Connecticut Supreme Court "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from [*14] some important violation of public policy." (Emphasis in original.) *Carbone v. Atlantic Richfield Co.*, supra, 204 Conn. 466-67, quoting *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980). "The right to recover in tort for wrongful discharge extends only to employees at will." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, supra, 202 Conn. 211 n.1.

The plaintiff makes allegations that the Corporate Defendants violated General Statutes 53a-11, 53a-48, 53a-96, 53a-188, 53a-189 and 53a-192. (See Revised Complaint, count three, 56.) The alleged public policy violations asserted by the plaintiff took place during the internal investigation into the plaintiff's (and other employees') alleged misconduct prior to the plaintiff's termination. The plaintiff alleges that he was terminated for "repeated willful misconduct"; (see Revised Complaint, 39); including the taking of bribes. (See Revised Complaint, 15.)

The above allegations, as pleaded, are not sufficient to support a cause of action for wrongful termination. "It [is] clear that in order to state a cause of action for wrongful termination, an employee must allege [*15] that he or she was terminated *because of an attempt to uphold or vindicate an important public policy.*" (Emphasis added.) *Ferrato v. N. Car Rental System, Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, 1996 Conn. Super. LEXIS 1838, Docket No. 549720 (July 18, 1996) (Aurigemma, J.). The plaintiff in the present case makes no allegation in count three that he was discharged "because of an attempt to uphold or vindicate an important public policy"; *Id.*; but alleges rather that the Corporate Defendants allegedly committed several statutory violations in the process of uncovering a reason to terminate the plaintiff. *See Kelley v. United States Shoe Corp.*, Superior Court, judicial district of Ansonia-Milford at Milford, 1993 Conn. Super. LEXIS 2926, Docket No. 042492 (November 5, 1993) (Rush, J.) (holding that discharging the plaintiff for embezzlement, which was discovered following a 2 1/2 hour interview with the plaintiff without interruption and the plaintiff's signing a inculpatory statement, was not violative of an important public policy). n7 The motions to strike count three are granted.

> n7 But see *Greenleaf v. Ames Department Stores*, Superior Court, judicial district of Hartford-New Britain at Hartford, 1995 Conn. Super. LEXIS 283, Docket No. 526824, 8 Conn. L. Rptr. 725 (January 27, 1995) (Corradino, J.)

[*16]

Count Five: Intentional Infliction of Emotional Distress

The Group Defendants and Downs argue that the plaintiff has failed to allege facts which support a cause of action for intentional infliction of emotional distress, further noting that (1) the defendants are not liable if they were exercising their rights to uncover intra-corporate wrongdoing in a permissible way; and (2) termination alone, even for an improper motive, is not enough to sustain a cause of action for intentional infliction of emotional distress. The plaintiff contends that the motions to strike fail to look at the factual allegations incorporated by reference into count five.

"In order for the plaintiff to prevail in a case for liability under . . . intentional infliction of emotion distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan* [*17] *v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

"Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for the court. Only where reasonable minds can differ does it become an issue for the jury." *Parsons v. Sikorsky Aircraft Division*, Superior Court, judicial district of Fairfield at Bridgeport, 1996 Conn. Super. LEXIS 580, Docket No. 280394 (March 1, 1996) (Levin, J.). "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) *Id.* "Intentional, like negligent infliction of emotional distress in the employment context arises only where it is based upon conduct of the defendant in the termination process." *Id.*, citing *Morris v. Hartford Courant Co.*, 200 Conn. 676, 681-82, 513 A.2d 66.

Even construing the facts alleged in the light most favorable to the plaintiff, the present complaint does not satisfy the fourth element required to be alleged and proven, i.e., severe emotional distress, because the plaintiff has failed to allege any facts, which, if proven, [*18] would demonstrate that he has actually suffered severe emotional distress. (See Revised Complaint, count 5, 63 stating, "Said action of all defendants have caused plaintiff to suffer severe emotional distress.") "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems v. BOC Group, Inc.*, supra, 224 Conn. 215. Accordingly, the motions to strike are granted as to count five.

   Count Six: Negligent Infliction of Emotional Distress

The Group Defendants and Downs contend that the plaintiff has failed to allege facts to demonstrate any unreasonable conduct on the part of the defendants, and that the cause of action for negligent infliction of emotional distress should therefore fail. The plaintiff opposes the motion to strike count six on the ground that the conduct of all the defendants during the termination process was unreasonable.

To sustain a cause of action for negligent/unintentional infliction of emotional distress, "the plaintiff does have the burden of pleading . . . that the defendant should have realized that its conduct involved an unreasonable risk of causing [*19] emotional distress and that that distress, if it were caused, *might result in illness or bodily harm*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Morris v. Hartford Courant Co.*, supra, 200 Conn. 683. In the employment context, "a complaint is not sufficient if it simply alleges mere termination. Rather, a complaint must allege more, for instance, that the actual termination was . . . done in an inconsiderate, humiliating, or embarrassing manner." (Citations omitted; internal quotation marks omitted.) *Skierkowski v. Creative Graphics Services, Inc.*, Superior Court, judicial district of Hartford-New Britain at New Britain, 1995 Conn. Super. LEXIS 1374, Docket No. 463242 (May 5, 1995) (Handy, J.).

The plaintiff alleged, in addition to the actual termination of employment; (see Revised Complaint, 39); that (1) he was interrogated in a locked room for several hours without interruption on at least three different occasions; (see Revised Complaint, 11, 18, 24-28 ); (2) the plaintiff was escorted by security guards to leave the premises on the day he was terminated "in full view of his co-workers"; (see Revised Complaint, 41); (3) "armed security personnel [were [*20] positioned] at all major exits and entrances" and "security vehicles with flashing lights [were positioned] in the parking lot"; (see Revised Complaint, 42); and (5) the defendants made a public announcement to all employees that the alleged reason for the plaintiff's termination was "breach of business ethics." (See Revised Complaint, 43.)

Construing the above factual allegations collectively in the light most favorable to the plaintiff, the plaintiff has alleged facts, which, if proven, may be deemed unreasonable conduct on the part of the defendants during the termination process and which may be considered "inconsiderate, humiliating, or embarrassing." See *Skierkowski v. Creative Graphics Services, Inc.*, supra. See also *Kelley v. United States Shoe Corp.*, supra; *Skierkowski v. Creative Graphics Services, Inc.*, supra (denying a motion to strike a count for negligent infliction of emotional distress because the plaintiff alleged that he relied on representations of job security and the plaintiff was terminated in the presence of two other employees). n8 Defendants' motions to strike count six are denied.

> n8 But see *Parsons v. Sikorsky Aircraft Division*, supra (holding that it was not unreasonable for the defendant employer to have the terminated employee plaintiff "removed from its building under a security escort"); *Grieco v. Hartford Courant Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, 1993 Conn. Super. LEXIS 298, Docket No. 372593 (January 27, 1993) (Aurigemma, J., 8 CSCR 219) (holding that an "investigation including interviews with a number of witnesses, the taking of signed statements and the actual observations by the plaintiff's investigator of the plaintiff's theft" was a "reasonable response to theft in [the defendant's] workplace and was well within the bounds of acceptable behavior").

[*21]

   Count Eight: Negligent Misrepresentation

The Group Defendants contend that any representations made did not change the "at will" status of the plaintiff, nor did any representations made during the actual internal investigation process cause any damage to the plaintiff. Moreover, the Group Defendants argue, the plaintiff failed to allege that he reasonably relied on any misrepresentations made. Downs notes that the plaintiff failed to allege specifically what facts were negligently misrepresented or how the plaintiff relied on those facts.

The plaintiff counters that (1) a cause of action for negligent misrepresentation is legally sufficient if the plaintiff merely alleges that the representations made contained false information; and (2) the plaintiff relied to his detriment on the statements made that (a) he could correct the statements he signed during the interview, (b) he would be treated fairly, and (c) upper management would review the termination decision.

"[The Connecticut Supreme Court] has long recognized liability for negligent misrepresentation . . . Even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, [*22] ought to know, or has the duty of knowing the truth." (Citation omitted; internal quotation marks omitted.) *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra*, 202 Conn. 218. "For purposes of a cause of action for negligent misrepresentation . . . the plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information." *Id.*, 218. "Courts liberally construe the pleadings in a way so as to sustain such a claim, particularly where the allegations in a complaint indicate, on their face, that an employer failed to exercise reasonable care in making representations to an employee on which the employee relied to his detriment." *Id.*, 219-20. Lack of specificity of the alleged "nature of the defendants' negligence"; *Id.*, 220; is not enough to warrant striking a cause of action for negligent misrepresentation, so long as the "facts alleged by the plaintiff . . . fairly apprised the defendants of [the plaintiff's] intent to pursue a claim for negligent misrepresentation." *Id.* For a claim for negligent misrepresentation, "the plaintiff must allege and [*23] prove that the reliance on the misstatement was justified or reasonable. We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances." *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 579-80, 657 A.2d 212 (1995).

Construing the facts alleged in the complaint in the light most favorable to the plaintiff, I conclude that the plaintiff has sufficiently pleaded facts to support a cause of action for negligent misrepresentation. For example, the plaintiff alleged that he relied on the defendants' representations that the plaintiff could amend the statements that the plaintiff signed, but yet was not given the opportunity to do so; (see Revised Complaint, 19-23, 28-31, 38); and that he was told that if he signed the statements he would not be terminated. but nevertheless was terminated based solely on his signing the statements. (See Revised Complaint, 22, 39.) Accordingly, the motions to strike count eight are denied.

Conclusion

For the foregoing reasons, the defendants' motions to strike are granted as to counts 3 and 5, and denied as to counts 1, 2, 6 and 8.

Douglas S. Lavine

Judge, Superior [*24] Court

LEXSEE 2001 CONN. SUPER. LEXIS 1755

Arlie Thompson v. Bridgeport Hospital

CV98352686

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT

2001 Conn. Super. LEXIS 1755

June 18, 2001, Decided
June 22, 2001, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motion to strike counts one through six, nine and ten granted on basis plaintiff fails to state claims upon which relief can be granted. Motion to strike count eleven granted on basis court does not have jurisdiction over cause of action stated.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer moved to strike plaintiff employee's second amended complaint, which alleged breach of express contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, negligent misrepresentation, violations of Conn. Gen. Stat. §§ 31-71a to 31-71i, 31-76k, 31-128g, 38a-537, and a violation of 29 U.S.C.S. § 1161 et seq.

**OVERVIEW:** Upon consideration of the employer's motion, the trial court held that the employee's claims alleging breach of express contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, negligent misrepresentation, and violations of Conn. Gen. Stat. §§ 31-128g, 38a-537, failed to state claims upon which relief could be granted. There were several bases for this holding, including: (1) the employee did not allege that she had anything other than an at will employment relationship with the employer or that the employer violated an important public policy in terminating her employment; (2) she did not allege the terms of an implied contract; (3) she did not allege that the employer's conduct involved impropriety derived from some important public policy violation; and (4) her allegations, at most, amounted to an agreement to enter into an at will employment relationship and not a contract to employ her for a fixed term. The trial court did not have jurisdiction over her claim for an alleged violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.S. § 1161 et seq.

**OUTCOME:** The motion to strike was granted as to the claims for breach of express contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, negligent misrepresentation, and violations of two of the four Connecticut statutory provisions. The motion was also granted as to the claimed violation of the Consolidated Omnibus Budget Reconciliation Act.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** MORAN, J.

**OPINIONBY:** MORAN

**OPINION:** *MEMORANDUM OF DECISION RE: MOTION TO STRIKE DATED MARCH 3, 2000 ( # 118)*

The plaintiff, Arlie Thompson, alleges the following facts in her second amended complaint. In October 1997, the defendant, Bridgeport Hospital, orally informed the plaintiff, a nine-year employee then working as a technician assistant, that her department was closing and that she would be informed as to layoff procedures at some future time. Despite her repeated requests, the plaintiff did not receive written notice that she would be laid off or any information as to layoff procedures. In November 1997, the plaintiff's supervisor orally informed her that she would be terminated effective December 1, 1997. At the time of her layoff, the plaintiff did not receive severance [*2] pay, accrued vacation pay and other benefits she claims were due to her. In January 1998, after the plaintiff was terminated, she received a written unemployment notice.

The defendant notified the plaintiff in December 1997, that a clerical position was available within the hospital. She accepted the position and was scheduled to begin employment on January 12, 1998. The defendant sent her for a new security badge, measured her for a new uniform and gave her a security password for the computer system. Relying on the defendant's offer, the plaintiff quit her part-time morning jobs, which conflicted with the hours she would be required to work in the new position. Shortly thereafter, the defendant informed the plaintiff that she would be required to take a test for the clerical position. When the plaintiff did not pass the test, the defendant revoked its offer. The plaintiff requested copies of her exam and the answer key, but the defendant refused to provide them to her. The defendant also did not respond to the plaintiff's request to see her personnel file.

On April 21, 1998, the plaintiff filed a complaint against the defendant in which she asserted causes of actions for [*3] breach of express contract (count one), breach of implied contract (count two), breach of implied covenant of good faith and fair dealing (count three), promissory estoppel (count four), negligent infliction of emotional distress (count five), negligent misrepresentation (count six), violation of General Statutes § 31-71a through § 31-71i (count seven), violation of General Statutes § 31-76k (count eight), violation of General Statutes § 31-128g (count nine), violation of General Statutes § 38a-537 (count ten) and violation of 29 U.S.C. § 1161 et seq. (count eleven). On May 10, 1999, defendant filed a motion to strike counts five, nine, ten and eleven. At oral argument, the court, *Nadeau, J.*, granted the defendant's motion to strike as to counts nine, ten and eleven. n1 In a memorandum of decision dated November 9, 1999, the court, *Nadeau, J.*, granted the motion to strike as to count five.

n1 The court did not issue a memorandum of decision as to its ruling on these counts.

[*4]

On November 23, 1999, the plaintiff filed a request for leave to file a second amended complaint. In the second amended complaint, the plaintiff asserts the same eleven causes of actions that she asserted in the previous complaint. The defendant filed an objection to the request to amend which was overruled without prejudice by the court, *Melville, J.*, on January 18, 2000. In its order, the court stated: "objection herein stated raises an issue more properly treated by a motion to strike than an objection to an amendment. See Practice Book § 10-60(b)." n2 On March 6, 2000, the defendant filed a motion to strike counts one through six and nine through eleven of the second amended complaint. The plaintiff and the defendant both filed memoranda of law. The motion was heard by the court on September 11, 2000.

n2 The defendant objected to the plaintiff's request to file the second amended complaint on the basis that counts five, nine, ten and eleven do not state causes of action upon which relief can be granted and on the basis that the plaintiff failed to timely amend counts nine, ten and eleven as required by Practice Book § 10-44.

[*5]

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates*, 244 Conn. 269, 270, 709 A.2d 558 (1998). n3 "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . what is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) *Pamela B. v. Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998).

n3 Note that the defendant does not specify the grounds for its motion to strike in its motion but does so in its supporting memorandum. In *Bouchard v. People's Bank*, 219 Conn. 465, 468 n.4, 594 A.2d 1 (1991), the court stated: "The

defendant's motion to strike simply stated that the plaintiff had 'failed to state a claim upon which relief can be granted.' Because the defendant did not specify the distinct reasons for the claimed insufficiency of the plaintiff's complaint in its motion, the motion was 'fatally defective' under Practice Book § [10-41] notwithstanding the defendant's inclusion of such reasons in its supporting memorandum . . . We, nevertheless, consider the defendant's motion in the form presented to the trial court due to the plaintiff's failure to object to its form and the nonjurisdictional nature of § [10-41]." (Citation omitted.) Because the plaintiff in this case also failed to object to the defendant's motion on this basis, the court shall consider the motion.

[*6]

The defendant argues that counts nine, ten and eleven should be stricken because these counts were previously stricken by the court on June 21, 1999, and the plaintiff did not file her amended complaint until November 23, 1999, and thus failed to replead within fifteen days as required by Practice Book § 10-44. The plaintiff contends that her repleading was timely and that § 10-44 only applies to circumstances in which an entire pleading is stricken. Practice Book § 10-44 provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

"Practice Book § 157 [now Practice Book § 10-44] does not preclude an attempt to replead under § 176 [now Practice Book § 10-60] n4 after the expiration of the fifteen-day period following the granting [*7] of a motion to strike. Section 157 provides that where no new pleading is filed within the fifteen-day period, the court 'may upon motion' render judgment against the party whose pleading has been stricken. The use of the phrase 'may upon motion' demonstrates that judgment does not enter automatically after the failure to replead during the time period set out in § 157. Since further action is required to obtain judgment, the party against whom judgment is sought may avail herself of the opportunity to request leave to file an amended or substitute complaint pursuant to § 176 at any time prior to the rendering of judgment.

n4 Practice Book § 10-60(a) provides in relevant part: "Except as provided in Section 10-66, a party may amend his or her pleadings . . . at any time subsequent to that stated in the preceding section in the following manner: . . . (3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . ."

"This view of Practice Book § [*8] 176 is consistent with the policy underlying General Statutes § 52-121(a). That statute provides that 'any pleading in any civil action may be filed after the expiration of the time fixed by statute or by a rule of court until the court has heard any motion for judgment by default or nonsuit for failure to plead which has been filed in writing with the clerk of the court in which such cause is pending.' " *Dennison v. Klotz*, 12 Conn. App. 570, 574-75, 532 A.2d 1311 (1987), cert. denied, 206 Conn. 803, 535 A.2d 1317 (1988). "[ Connecticut General Statutes] § 10-44 does not provide for judgment to enter after 15 days, only that the court 'may, upon motion, enter judgment.' As with other pleading requirements, this language gives the court discretion to allow a pleading outside the prescribed time period." (Internal quotation marks omitted.) *Shpak v. Beard*, 1998 Conn. Super. LEXIS 3269, Superior Court, judicial district of yew Haven at New Haven, Docket No. 369337 (November 20, 1998) (*Hartmere, J.*) (23 Conn. L. Rptr. 412. 413).

"The filing of a late substitute pleading does not deprive the court of its discretionary power [*9] in allowing a pleading outside the prescribed time period. Thus, courts have allowed the submission of a substitute complaint beyond the fifteen-day period set forth in Practice Book § 157, now Practice Book (1998 Rev.) § 10-44. See *Shpak v. Beard*, [*supra*, 1998 Conn. Super. LEXIS 3269, 23 Conn. L. Rptr. 412]. Accordingly, the fact that the pleading was filed one day late would not necessarily mean that the amended complaint was improper and outside the scope of the court's consideration. This is especially true when the substituted pleading is filed in conjunction with Practice Book § 176, now Practice Book (1998 rev.) § 10-60, which allows an amended complaint to be filed at any time with the consent of the judicial authority." *Rowlands v. Commodore Commons Condominium Assn.*, 1999 Conn. Super. LEXIS 1845, Superior Court, judicial district of Ansonia/ Milford at Milford, Docket No. 63281 (July 1999) (*Flynn J.*). Thus, in several cases, judges of the Superior Court exercised their discretion and allowed plaintiffs to file amended complaints beyond the fifteen-day period set forth in § 10-44. See *D'Amato v. Carpenter and Chapman, Inc.*, Superior Court, judicial district of New Haven at New

Haven, Docket No. 250606 (December 13, 1989) [*10] (*Purtill, J.*) (4 C.S.C.R. 103); *Shpak v. Beard, supra*, 1998 Conn. Super. LEXIS 3269, 23 Conn. L. Rptr. 412; *Allard v. Johnson Memorial Hospital*, 1990 Conn. Super. LEXIS 854, Superior Court, judicial district of Tolland at Rockville, Docket No. 42988 (August 9, 1990) (*Jackaway J.*); *Loe v. Niland*, Superior Court, judicial district of Waterbury, Docket Nos. 78808, 78809, 78810 (November 2, 1988) (*Healey, J.*) (3 C.S.C.R. 923).

Therefore, the court has discretion to allow the plaintiff to file her amended complaint beyond the fifteen-day limitation articulated in Practice Book § 10-44. Although the plaintiff waited for over five months after the motion to strike counts nine, ten and eleven was granted before requesting permission to replead, she did file her amended pleading in conjunction with a request to amend pursuant to Practice Book § 10-60. In addition, during this time, the remaining counts of the complaint were still pending. Therefore, allowing the plaintiff to amend the complaint after the fifteen-day period would not be unduly prejudicial or harmful to the defendant. Accordingly, the court exercises its discretion and denies the defendant's motion to strike counts nine, ten and eleven on the basis [*11] of timeliness.

The court now considers whether the plaintiff has stated causes of action upon which relief can be granted in counts one through six and counts nine through eleven. In count one, the plaintiff asserts that the defendant's personnel policy and other documents created an express contract and that the defendant breached this contract by 1) failing to give the plaintiff written and oral notice regarding termination; 2) failing to provide her with an unemployment notice; 3) failing to pay the plaintiff severance pay, vacation pay and other benefits after she was terminated; 4) failing to offer her another position; 5) offering her a position and then revoking the offer after she accepted it; 6) requiring her to take a test for the new position; 7) failing to provide her with copies of the test and answer key; and 8) failing to reinstate the plaintiff in the position she was offered and accepted. The defendant contends that count one should be stricken because the plaintiff fails to allege facts to support her contention that she had an express contract of employment with the defendant. The plaintiff counters that she does not take issue with the fact that her employment [*12] was terminated but rather with the manner in which she was terminated. She claims that the defendant's documents created an express contract as to the specific terms of her employment pertaining to termination, notice, severance pay, seniority rights, re-employment rights, vacation pay and benefits, testing and reinstatement and that the defendant breached each of the terms of this contract.

For a contract to exist, "the intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) *Sloan v. Kubitsky*, 48 Conn. App. 835, 839, 712 A.2d 966 (1998), appeal dismissed, 248 Conn. 670, 728 A.2d 1095 (1999). "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership v. Society for Savings*, 243 Conn. 832, 843, 708 A.2d 1361 (1998). "Traditionally, an employment contract of indefinite duration is terminable at the will of either party." *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 495, 523 A.2d 1356, [*13] cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). Under an at will employment arrangement the employer can discharge the worker at any time for any reason as long as in so doing the employer does not violate an important public policy. *Carbone v. Atlantic Richfield Co.*, 204 Conn. 460, 467, 528 A.2d 1137 (1987). "Certain material terms such as the duration, salary, fringe benefits and other conditions of employment are deemed essential to an employment contract. See *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, [202 Conn. 206, 215, 520 A.2d 217 (1987)]. Mere representations indicating an intent to enter into a future contract for employment do not give rise to contractual liability . . . [A] promise indicating an intent to make a future employment contract, absent an agreement on the material terms of employment, is not binding as a contract regardless of the promisor's partial performance." *Geary v. Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 628, 760 A.2d 969 (2000).

Construing the factual allegations in the complaint in the manner most favorable to the plaintiff, as to both of the [*14] employment positions the plaintiff refers to in her complaint, plaintiff fails to include any specific factual allegations concerning the formation and terms of the contracts she claims she had with the defendant. Moreover, the plaintiff fails to allege that she had anything other than an at will employment relationship with the defendant or that the defendant violated an important public policy in terminating her employment. Therefore, the court grants the defendant's motion to strike count one.

In count two, the plaintiff asserts that the factual allegations she made in count one also support a cause of action or breach of an implied contract. The defendant contends that his count should be stricken on the same basis as count one. The plaintiff again responds that this cause of action is not based on the termination of her

employment, but the manner hereof and the way she was treated in regard to the clerical position.

"At the outset . . . all employer-employee relationships not governed by express contacts involve some type of implied 'contract' of employment . . . To determine the contents of any particular implied contract of employment, the factual circumstances of [*15] the parties' relationship must be examined in light of legal rules governing unilateral contracts." (Citations omitted.) *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 13, 662 A.2d 89 (1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like." *Id.* 14. An employment at will relationship can, however, be "modified by agreement of the parties." *Id.* 15. To sustain a cause of action based on the alleged "existence of an implied agreement between the parties, the plaintiff [has] the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause . . ." (Citations omitted, internal quotation marks omitted.) *Id.* "A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) *Coelho v. Posi-Seal International, Inc.*, 208 Conn. 106, 111-12, 544 A.2d 170 (1988). [*16] "A contractual promise cannot be created by plucking out phrases out of context; there must be a meeting of minds between the parties . . . In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." (Citations omitted; internal quotation marks omitted.) *Burnham v. Karl & Gelb P.C.*, 50 Conn. App. 385, 389, 717 A.2d 811 (1998), affirmed on other grounds, 252 Conn. 153, 745 A.2d 178 (2000).

When the facts alleged in the complaint are construed in favor of the plaintiff, it is apparent that the plaintiff fails to allege the terms of an implied contract. She fails to allege that the defendant made any definite representations to her indicating its intention to enter into a contract with her. Her allegations that she received a new security badge, new uniform and computer password from the defendant are not sufficient to show an implied contract. Therefore, the court grants the defendant's motion to strike count two.

In count three, the plaintiff asserts that the defendant reached [*17] an implied covenant of good faith and fair dealing by not providing her with the information she requested regarding the layoff, her unemployment notice and her personnel file. The defendant contends that this count should be stricken on the same basis as counts one and two. The plaintiff responds that the implied covenant of good faith and fair dealing was part of the contractual commitment between the parties.

In Connecticut, it is well established that every contract, express or implied, carries with it an implied covenant of good faith and fair dealing, the bad faith violation of which is actionable in tort. See *Gupta v. New Britain General Hospital*, 239 Conn. 574, 598, 687 A.2d 111 (1996). The Supreme Court has, however, limited the circumstances in which such a covenant can be applied to employment at will relationships. Accordingly, the court has stated that "where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right [to discharge at will] . . . We see no reason . . . to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond [*18] the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.) *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984).

"The covenant of good faith and fair dealing presupposes the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term . . . The existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." (Citations omitted; internal quotation marks omitted.) *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 793, 749 A.2d 1144 (2000).

As noted above, the plaintiff fails to allege facts sufficient to show that she had either an express or implied contract of employment with the defendant. Furthermore, to the extent that the plaintiff was employed at will, in order to sustain this cause of action she is required to allege that the defendant's conduct involved "impropriety . . . derived from some important violation of [*19] public policy." *Magnan v. Anaconda Industries, Inc.*, supra, 193 Conn. 572. She has not done so and thus, has not sufficiently alleged a claim for a breach of duty of good faith and fair dealing. Therefore, the court grants the defendant's motion to strike count three.

In count four, the plaintiff asserts a cause of action for promissory estoppel. The plaintiff alleges that the defendant's conduct in failing to adequately inform her

about the layoff, and offering her the clerical position induced reasonable reliance on her part. She also alleges that she reasonably relied on the defendant's offer by quitting her part-time job to take the clerical position and that the defendant should have known its actions would induce reasonable reliance on her part. The defendant contends that count four should be stricken because the plaintiff fails to allege that the defendant promised to terminate the plaintiff's employment only for just cause. The plaintiff responds that she has adequately alleged that the defendant made clear definite promises to her. She specifically cites to her allegation that she did not receive an unemployment notice upon termination and to her [*20] allegations regarding the clerical position.

"Under the law of contract, a promise is generally not enforceable unless it is supported by consideration . . . [The Supreme] court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor . . ." (Citations omitted; internal quotation marks omitted.) *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, supra, 202 Conn. 213. "Section 90 of the the statement Second [Contracts] states that under the doctrine of promissory estoppel '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *Id.* Thus, a plaintiff asserting a cause of action for promissory estoppel must plead and prove the following four elements: 1) the promisor made a clear and definite promise; 2) the promisee reasonably relied on the promise; 3) the promise induced the action taken by the promisee; [*21] and 4) injustice can be avoided only by enforcement of the promise. 202 Conn. at 213-15. The promise must be clear and definite and must contain the material terms that are essential to the formation of a contract. 202 Conn. at 215.

When all the facts alleged in the complaint are construed in favor of the plaintiff, the allegations are not sufficient to allege a cause of action for promissory estoppel for two reasons. First, the plaintiff does not include allegations specifying any definite promises that were made to her. Statements by employers which do not contain "any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits . . ." and "at most [constitute] representations to the plaintiff concerning the expectation of a future contract . . ." and are neither sufficiently promissory nor sufficiently definite to support a cause of action for promissory estoppel. *Id.*

Second, she alleges that she was offered the clerical position, but does not allege that her employment in that position would be other than at will. "The allegations, [*22] at most, amount to an agreement to enter into an at-will employment relationship and not a contract to employ the plaintiff for a specific term." *Corrado v. Leonard*, 1992 Conn. Super. LEXIS 868, Superior Court, judicial district of Danbury, Docket No. 307646 (March 26, 1992) (*Fuller, J.*). n5 Therefore, the court grants the defendant's motion to strike count four of the amended complaint.

> n5 As explained by the court in a recent case, "the mere fact that a bonus or profit sharing and pension payments were promised as part of the initial offer of employment cannot turn the employment arrangement into one that is only terminable for cause, thus providing the basis for the damage claim in this count. How would promises of these types of deferred compensation create a situation any different from the ordinary case where a worker, not hired for a definite term, is told he or she would be earning a certain salary--once the worker is fired the right to future salary is lost but how can that be made the basis of a promissory estoppel claim? What's the detriment--that the employee could not work at the job any more? That would be circular reasoning: Or to put it another way, given the nature of the at-will doctrine, how could it be held that an employer would expect that a worker would rely on a promise of future remuneration and thus be estopped from firing that worker thereby cutting off the possibility of such remuneration--this reasoning would negate the employee at-will doctrine." *Swihart v. Country Home Bakers*, 1999 Conn. Super. LEXIS 1861, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 6094 (July 16, 1999,) (*Corradino, J.*).

[*23]

In count five, the plaintiff asserts a cause of action for negligent infliction of emotional distress. She bases this cause of action on her allegations that the defendant breached its duty of reasonable care by intentionally withholding information from her regarding the layoff and the results of the test for the clerical position and by offering her the clerical position and then revoking its offer. The plaintiff also alleges that during the termination process, she was treated in an inconsiderate manner by another employee and that the defendant failed to provide her with information regarding her health coverage. The defendant notes that this cause of